**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**
**Judge William J. Martínez**

Civil Action No. 10-cv-00531-WJM

NORBERTO MARQUEZ OCHOA,

Plaintiff,

vs.

MICHAEL J. ASTRUE, Commissioner of Social Security,

Defendant.

---

## ORDER REVERSING ADMINISTRATIVE LAW JUDGE'S DECISION

---

THIS MATTER is before the Court on review of the Commissioner's decision which denied Plaintiff's applications for a period of disability, disability insurance benefits, and supplemental security income pursuant to Titles II and XVI of the Social Security Act ("the Act"), 42 U.S.C. §§ 401-33 and 1380-83. Jurisdiction is proper under 42 U.S.C. § 405(g). For the reasons set forth below, the Commissioner's decision denying Plaintiff's application for Social Security disability benefits is REVERSED and the matter is REMANDED for an immediate award of benefits.

## BACKGROUND

Plaintiff Norberto Marquez Ochoa ("Plaintiff") was born on June 6, 1955 and was 49 years old on the alleged disability onset date. (Admin. Record ("R.") at 160.) Plaintiff attended school in Mexico and has a fifth grade education. (R. at 606.) Plaintiff's use of English is limited. (*See* R. at 175, 607.) Plaintiff's past relevant work experience includes working as a house framer and a meat sorter. (R. at 176.) Plaintiff claims he

has been disabled since March 18, 2005 due to back, leg, arm, and right knee pain, and hearing loss. (R. at 175-76.)

Plaintiff filed applications for a period of disability and disability insurance benefits and for supplemental security income on June 7, 2005. (R. at 67.) Plaintiff's claims were initially heard by the Administrative Law Judge ("ALJ") on October 25, 2007. (R. at 67.) Plaintiff and a vocational expert testified at this administrative hearing. (*Id.*) On December 15, 2007, the ALJ issued a written decision denying Plaintiff's application for benefits. (R. at 75.) After review, the Appeals Council remanded the case back to the ALJ on August 1, 2008 in order to further consider Plaintiff's residual functional capacity ("RFC") and to obtain supplemental vocational evidence applicable to Plaintiff's past work experience. (R. at 48.) On remand, the ALJ again heard Plaintiff's claims during an administrative hearing on March 5, 2009. (R. at 602.) Plaintiff and a vocational expert testified at this second hearing. (*Id.*)

On July 7, 2009, the ALJ issued a written decision in accordance with the Commissioner's five-step sequential evaluation process.[1] At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since March 18, 2005. (R. at 24.) At step two, he found that Plaintiff suffered from the following severe impairments: lumbar degenerative disc disease with low back pain and osteoarthritis of the knees.

---

[1]The five-step process requires the ALJ consider whether a claimant: (1) engaged in substantial gainful activity during the alleged period of disability; (2) had a severe impairment; (3) had a condition which met or equaled the severity of a listed impairment; (4) could return to her past relevant work; and, if not, (5) could perform other work in the national economy. *See* 20 C.F.R. § 404.1520(a)(4), 416.920(a)(4); *Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988.) The claimant has the burden of proof through steps one to four; the Social Security Administration has the burden of proof at step five. *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007).

(*Id.*) At step three, the ALJ found that Plaintiff's impairments, while severe, did not meet any of the impairments or combination of impairments listed in the social security regulations. (R. at 26.) At step four, the ALJ found that Plaintiff had the RFC to perform less than a full range of "medium" work as defined by the regulations, including lifting and carrying 50 pounds occasionally and 25 pounds frequently; stand 6 hours in an 8 hour day; sit 6 hours in an 8 hour day; perform unlimited pushing and pulling; occasionally climb ramps, stairs, ladders, ropes and scaffolds; frequently balance, stoop, kneel, crawl and crouch but not more than 6 hours in a day; no more than 6 hours of overhead reaching in a day; unlimited handling, fingering and feeling and no visual, communicative or environmental limits. (R. at 27.) Given this RFC, and based on the vocational expert's testimony, the ALJ found that Plaintiff could perform past relevant work as a house carpenter. (R. at 32.) Accordingly, the ALJ found that Plaintiff was not disabled within the meaning of the Act and, thus, not entitled to benefits. (R. at 33.) The Appeals Council denied Plaintiff's request for review on December 18, 2009. (R. at 8.) Plaintiff then filed this action seeking review of the Commissioner's decision.

## STANDARD OF REVIEW

The Court reviews the Commissioner's decision to determine whether substantial evidence in the record as a whole supports the factual findings and whether the correct legal standards were applied. *Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Id*. "It requires more than a scintilla, but less than a preponderance." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007). Evidence is not

substantial if it is overwhelmed by other evidence in the record. *Grogan v. Barnhart*, 399 F.3d 1257, 1261-62 (10th Cir. 2005). In reviewing the Commissioner's decision, the Court may neither reweigh the evidence nor substitute its judgment for that of the agency. *Salazar v. Barnhart*, 468 F.3d 615, 621 (10th Cir. 2006). "On the other hand, if the ALJ failed to apply the correct legal test, there is a ground for reversal apart from a lack of substantial evidence." *Thompson v. Sullivan*, 987 F.2d 1482, 1487 (10th Cir. 1993).

**DISCUSSION**

On appeal to this Court, Plaintiff argues that the ALJ did not fully comply with the Appeals Council's Remand Order. (Pl's Opening Brief, ECF No. 13 at 6.) Plaintiff further argues that he was denied due process of law and that the record does not support the ALJ's evaluation of Plaintiff's (1) severe impairments; (2) treating physician's opinions; (3) past relevant work; (4) RFC; and (5) credibility. (*Id.*)

In its Remand Order, the Appeals Council ordered the ALJ to:

> Give further consideration to the claimant's maximum residual functional capacity and provide rationale with specific references to evidence of record in support of assessed limitations (Social Security Ruling 96-8p). In so doing, evaluate the examining and non-examining source opinions pursuant to the provisions of 20 CFR 404.1527 and 416.927 and Social Security Rulings 96-2p and 96-5p, and explain the weight given to such opinion evidence. As appropriate, the Administrative Law Judge may request the treating and examining sources to provide additional evidence and/or further clarification of the opinions (20 CFR 404.1512 and 416.912). The Administrative Law Judge may enlist the aid and cooperation of the claimant's representative in developing evidence from the claimant's treating sources.
>
> Obtain supplemental vocational evidence sufficient to allow a comparison between the claimant's residual functional capacity and the mental and physical demands of his past relevant work (20 CFR 404.1560, 416.960 and Social Security Rulings 82-16 and 82-62). If consideration is given to step five of the

> sequential evaluation process, the Administrative Law Judge will obtain evidence from a vocational expert to clarify the effect of the assessed limitations on the claimant's occupational base. The hypothetical questions should reflect the specific capacity/limitations established by the record as a whole. The Administrative Law Judge will ask the vocational expert to identify examples of appropriate jobs and to state the incidence of such jobs in the national economy (20 CFR 404.156 and/or 416.966). Further, before relying on the vocational expert evidence the Administrative Law Judge will identify and resolve any conflicts between the occupational evidence provided by the vocational expert and the information in the Dictionary of Occupational Titles (DOT) and its companion publication, the Selected Characteristics of Occupations (Social Security Ruling 00-4).

(R. at 48.)

***Physician Opinions***

In formulating his 2009 decision, the ALJ looked to the consultative examination performed by Dr. Gregory Denzel ("Dr. Denzel") in 2005, and to the opinion of treating physician Dr. Marc Ringel ("Dr. Ringel") from Brush Family Medicine. (R. at 29-30.)

Dr. Denzel examined Plaintiff on October 17, 2005 at the Commissioner's request. (R. at 368.) Following the examination and a review of x-rays taken at that time, Dr. Denzel diagnosed Plaintiff with chronic back pain and right knee pain. (R. at 370.) He recommended Plaintiff be restricted from lifting more than 50 pounds and pushing and pulling more than 60 pounds. (*Id.*) He further recommended that Plaintiff avoid prolonged overhead work or prolonged positioning of his lower back; repetitive bending, stooping, squatting, climbing, and crawling. (R. at 370-71.) Additionally, Dr. Denzel recommended Plaintiff avoid sitting, standing, or walking for more than two hours at a time without a frequent change in position. (R. at 371.)

The ALJ held that Dr. Denzel's description of Plaintiff's abilities is consistent with

the description of medium work as described by the regulations. (R. at 29.) The ALJ found that Dr. Denzel's opinion was based on a thorough clinical examination including diagnostic tests and is consistent with other objective medical evidence on the record. (*Id.*) The ALJ thus gave Dr. Denzel's opinion great weight.

Dr. Ringel's opinion, on the other hand, was given little weight by the ALJ. (R. at 31.) Dr. Ringel is Plaintiff's treating physician, and has been so since 2005. (*See* R. at 595.) Prior to seeing Dr. Ringel, Plaintiff saw a Dr. Rice, who also practiced at Brush Family Medicine where Plaintiff has been a regular patient. (*Id.*) Following more than a year of regular treatment and care as shown by the record, Dr. Ringel provided a Medical Source Opinion, indicating that Plaintiff should be limited to (1) lifting and carrying 3-5 pounds frequently and 10 pounds occasionally; (2) sitting for one-half hour at a time for a total of six hours in an eight-hour workday; (3) standing/walking less than one-half hour at a time for a total of one hour in an eight-hour workday; (4) occasionally reaching and handling bilaterally; and (5) never stooping, kneeling, crouching, crawling, or climbing stairs or ladders. (R. at 416-17.) These limitations are more strict than considered for medium work as described by the regulations. According to the ALJ, if Plaintiff cannot do medium work, he must be classified as disabled. (R. at 624.) Dr. Ringel noted that Plaintiff suffered from degenerative disk disease of the lumbar-sacral spine, fatigue due to coronary artery disease, that Plaintiff's narcotic pain medication decreased his mental acuity, and that Plaintiff's pain and fatigue would likely frequently interrupt his concentration. (R. at 417-19.)

In preparing the Medical Source Opinion, the record indicates that Dr. Ringel

would not complete the document until he had reviewed Plaintiff's medical records, including records from the Orthopedic Center of the Rockies where Plaintiff was treated in 2001 and 2001 due to a back injury that occurred while Plaintiff was at work. (*See* R. at 28-29; 410-12.) Although the treatment notes do not indicate the depth of examinations performed by Dr. Ringel, Plaintiff's testimony indicates that Dr. Ringel's examinations included verifying range of motion and Plaintiff's perception of pain. (R. at 596.) Plaintiff testified that Dr. Ringel "had me bend over or try to bend this way or that way, [and he] checks out the pain I have." (R. at 596.)

The ALJ gave little weight to Dr. Ringel's opinion, reasoning that because there was no indication that Plaintiff followed up on a recommendation to get reduced-cost prescriptions from the Community Health Center Salud in Fort Morgan, Colo., Plaintiff must not have been in as much pain as he complained of. (R. at 30-31.) The Court, having reviewed the same records, does not find that Plaintiff was non-compliant in getting his medication. Instead, the Court concludes that that Dr. Ringel was merely assisting Plaintiff in reducing his cost for medication. (R. at 411-12.) There is no evidence in the record that Plaintiff did not fill his prescriptions for pain medication.

The ALJ further gave little weight to Dr. Ringel's opinion because he found that there was a lack of objective clinical findings supporting the opinion. (R. at 31.) However, if the ALJ had questions about Dr. Ringel's opinion, he should have re-contacted Dr. Ringel to supplement the record, as he was very specifically ordered to do by the Appeals Council. *See* 20 C.F.R. § 404.1512(e).

The opinion of a treating physician is generally "entitled to great weight because

it reflects expert judgment based on continuing observation of a patient's condition over a prolonged period of time." *Williams v. Chater*, 923 F. Supp. 1373, 1379 (D. Kan. 1996). An ALJ, however, may disregard that opinion if it is contradicted by other medical evidence, or is otherwise inconsistent with substantial evidence in the record. *See Marshall v. Astrue*, 315 F. App'x 757, 759-60 (10th Cir. 2009); 20 C.F.R. § 404.1527(d)(2). The analysis of how much weight to accord a treating source opinion is sequential:

> An ALJ must first consider whether the opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques. If the answer to this question is "no," then the inquiry at this stage is complete. If the ALJ finds that the opinion is well-supported, he must then confirm that the opinion is consistent with other substantial evidence in the record. In other words, if the opinion is deficient in either of these respects, then it is not entitled to controlling weight.

*Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003).

If a treating physician's opinion is not given controlling weight, the ALJ must determine what weight, if any, the opinion deserves, considering certain factors identified in the regulations. *See Watkins*, 350 F.3d at 1300-01. Treating physician opinions are still entitled to deference and the ALJ must give good reasons in his or her decision for the weight he or she ultimately assigns those opinions. *Id*. "[I]f the ALJ rejects the opinion completely, he must then give specific, legitimate reasons for doing so." *Id*. at 1301.

The Court finds that the ALJ should have given Dr. Ringel's opinion, as a treating physician, more weight than he did. Dr. Ringel's opinion provides a continuing observation of Plaintiff's condition, spanning from the back injury that precipitated

Plaintiff's back pain issues in 2001, to the time of the ALJ's 2009 hearing. Because of the Remand Order, the ALJ had the opportunity to further inquire about Dr. Ringel's opinion and the bases for it. (R. at 48.) Instead, the ALJ concluded that Dr. Ringel must have written the opinion as he did as a favor to Plaintiff and not because it was based on medical records. (R. at 31.) There is no evidence in the record which supports this conclusion. The Court finds that while Dr. Ringel did not indicate that his opinion was based on objective medical evidence, Dr. Ringel's treatment notes are clear that he would not submit such an opinion to the Social Security Administration without review of prior records. (R. at 410-12.)

***Vocational Evidence***

In determining whether Plaintiff could perform past relevant work, the ALJ relied on the testimony of a vocational expert. (R. at 32.) The ALJ posed a hypothetical question identifying

> a gentleman who is between 50 and 54 years of age with the work history . . . [of] house carpenter[, roofer,] and meat sorter . . . Closely approaching advanced age; can speak a little English but not much; is unable to read and write English; 5th grade education in Mexico. According to the government he can occasionally lift 50 pounds, frequently lift 25 pounds; stand or work about six hours in an eight hour day; sit about six hours in an eight hour day; push and pulling is unlimited. Posturally, he is, he can occasionally climb ramps, stairs, ladder, rope and scaffold; can frequently balance, stoop, kneel, crawl, and crouch but not more than six hours in a day. Overheard reaching is limited to six hours a day; handling, fingering and feeling is unlimited; no visual limits; no communicative limits; no environmental limits.

(R. at 623-34.) Based on the ALJ's hypothetical question, the vocational expert testified that such a hypothetical person could perform past relevant work of a house carpenter. (R. at 624.)

Under the Directory of Occupational Titles ("DOT"), a house carpenter:

> [c]onstructs, erects, installs, and repairs structures and fixtures of wood, plywood, and wallboard . . . conforming to local building codes: Studies blueprints, sketches, or building plans for information pertaining to type of material required . . . and dimensions of structure or fixture to be fabricated. . . . Prepares layout, using rule, framing square, and calipers. . . . Verifies trueness of structure with plumb bob and carpenter's level. . . . Builds stairs and lays out and installs partitions and cabinet work. . . .

DICOT 860.381-022. The vocational expert and ALJ based their assessment that Plaintiff had formerly worked as a house carpenter on a chart completed by the vocational expert who testified in the 2007 hearing. (R. at 220, 623.) This chart lists Plaintiff's work history as house carpenter and meat sorter. (R. at 220.)

According to Plaintiff, this position of "house carpenter" as he performed it was actually an "assembler" position. (ECF No. 13 at 30.) Plaintiff worked at Home Lumber Company where he put together pre-cut walls and roof trusses by nailing them together. (*Id.*) Plaintiff earned $10.00 an hour and states that he was able to perform this job because his supervisor instructed him in Spanish. (R. at 176, 607; ECF No. 13 at 31.) Plaintiff did not have to read blueprints, nor verify that any of the structures he built complied with applicable building code(s). Plaintiff argues that he does not have the training to be classified as a house carpenter, which has a skill level requirement of an SVP7. (ECF No. 13 at 30.) Within the DOT are Specific Vocational Preparation ("SVP") categories. "SVP is defined as 'the amount of lapsed time required by a typical worker to learn the techniques, acquire the information, and develop the facility needed for average performance in a specific job-worker situation.'" *Dikeman v. Halter*, 245 F.3d 1182, 1186 (10th Cir.2001) (quoting United States Department of Labor, Selected

Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles, App. B, B-1 (1993)). An SVP7 is defined as vocational training of over two years and up to and including four years. *See* DICOT 860.381-022.

Plaintiff, however, has only a 5th grade education from Mexico, states that he cannot read or write in English, and can only minimally speak and understand spoken English. (R. at 175, 607.) Thus, the ALJ's finding that Plaintiff could perform the occupation of house carpenter does not appear to be supported by substantial evidence. The job requirement for house carpenter includes, among other duties, reading blueprints, following local building codes, and preparing and verifying the lay-out of structures. DICOT 860.381-022. These job requirements clearly indicate that the individual in question must possess at least a working knowledge of the English language.

An ALJ must inquire about and resolve any conflicts between a vocational expert's testimony regarding available jobs and the descriptions of those jobs in the DOT. *Poppa v. Astrue*, 569 F.3d 1167, 1173 (10th Cir. 2009); SSR 004-p, 2000 WL 1898704, at *4 (1989). When the findings of the vocational expert are in conflict with the DOT, "the ALJ must investigate and elicit a reasonable explanation for any conflict between the Dictionary and expert testimony before the ALJ may rely on the expert's testimony as substantial evidence to support a determination of nondisability." *See Haddock v. Apfel*, 196 F.3d 1084, 1091 (10th Cir. 1999); SSR 00-4p, 2000 WL 1898704, at *4 (2000). When the ALJ fails to elicit such an explanation, the case must be reversed and remanded to allow the ALJ to address the apparent conflict between

Plaintiff’s inability to perform more than simple and repetitive tasks and the reasoning required by the jobs defined as appropriate for Plaintiff by the vocational expert. *Hackett*, 395 F.3d at 1176.

The Appeals Council already remanded Plaintiff’s case back to the ALJ to obtain supplemental vocational evidence to allow a comparison between claimant’s RFC and the mental and physical demands of his past relevant work. (R. at 48.) In addition to the fact that the Court finds the ALJ inappropriately considered the opinion and recommended physical limitations suggested by Plaintiff’s treating physician, the Court finds that the ALJ did not properly obtain evidence from the vocational expert addressing the conflicts between Plaintiff’s educational background and the requirements of the job of home carpenter. There is no explanation by the vocational expert as to why the DOT definition including an SVT level of 7 and an ability to, among other things, read blueprints and follow building codes, should not be found controlling.

Plaintiff contends, and this Court agrees, that Plaintiff’s past relevant work was not that of a home carpenter. In his application, Plaintiff described this past work as a house framer in an assembly-type setting. (R. at 176.) The ALJ did not address the conflict between Plaintiff’s actual past work as described by Plaintiff and the definition of house carpenter according to the DOT. This was clear error. *See Hackett*, 395 F.3d at 1176.

***Reverse and Award Benefits***

The Court finds that the ALJ did not comply with the Appeals Council’s Remand Order to give further consideration to medical opinions and to resolve any conflicts

between the occupational evidence and information in the DOT. On this basis, the Court must either reverse the ALJ's decision and remand for an immediate award of benefits, or remand for further fact-finding. Given the fact that this case has already been remanded once, in addition to the fact that there is little to be gained from additional fact-finding, the Court concludes that it must reverse the decision of the ALJ and remand for an immediate award of benefits.

The Tenth Circuit has indicated that "outright reversal and remand for immediate award of benefits is appropriate when additional fact finding would serve no useful purpose." *Sorenson v. Bowen*, 888 F.2d 706, 713 (10th Cir. 1989); *see also Nielson v. Sullivan*, 992 F.2d 1118, 1122 (10th Cir. 1993). Reversal and remand for an award of benefits is appropriate when "the record fully supports a determination that Plaintiff is disabled as a matter of law and is entitled to the benefits for which he applied." *Id*. The opinion of Plaintiff's treating physician, Dr. Ringell, supports a finding that Plaintiff is disabled under the Act and that no additional fact-finding is necessary. Dr. Ringel's opinion places functional limitations on Plaintiff that would require an RFC placing Plaintiff in the category of disabled. (*See* R. at 624.) Further, the ALJ's determination that Plaintiff can perform past relevant work as defined by the vocational expert is not supported by substantial evidence.

The Court has the discretion to award benefits when a remand for additional fact-finding would not serve a useful purpose "but would merely delay the receipt of benefits." *Salazar v. Barnhart*, 468 F.3d 615, 626 (10th Cir. 2006) (quoting *Harris v. Sec'y of Health & Human Servs.*, 821 F.2d 541, 545 (10th Cir. 1987)). In other words,

outright reversal is appropriate when "the record fully supports a determination that Plaintiff is disabled as a matter of law and is entitled to the benefits for which he applied." *Sorenson v. Bowen*, 888 F.2d 706, 713 (10th Cir.1989).

The record in this case fully supports a determination that Plaintiff is disabled. Accordingly, the Court finds that a remand in this case for additional fact-finding would not serve any useful purpose, and additionally finds there is no need for further proceedings other than to remand for an award of benefits. *Sisco v. U.S. Dept. of Health and Human Services*, 10 F.3d 739, 746 (10th Cir.1993).

## III. CONCLUSION

Based upon its review of the record in this case, the Court finds that the ALJ's findings are not supported by substantial evidence. Accordingly, the determination that Plaintiff is not disabled is REVERSED. The Court hereby ORDERS that this matter be REMANDED to the Commissioner for an immediate award of benefits as of March 18, 2005.

Dated this 30th day of September, 2011.

BY THE COURT

________________________________
William J. Martínez
United States District Judge